Hoffman, J.
We think that all the material facts are correctly found by the referee, and shall therefore confine our attention to the questions of law arising upon the facts, as he has found them.
1st. Independently of the question arising from Mrs. Wood’s ownership of the piano before her marriage, the case is substantially this: A mortgage is given at Albany on the 30th of November, 1852, and made valid there by a proper filing. It was to secure a note at three months; and the debt was due, therefore, about the 3d of March, 1854. In May, 1853, the piano was sent to New York, treated and repaired by direction of Wood, as his property, and sold as such to the defendants, in August, 1853. The testimony may not establish that Taiman positively consented to the removal of the piano. It does establish that he knew of the intended removal of the mortgagors to New York, and with their furniture.
That McHarg could not sustain this mortgage, which was never filed in New York, against creditors or bond fide purchasers, seems perfectly clear. (Griswold v. Shelden, 4 Comstock, 582, and cases cited.)
2d. The next and important question is, whether the defendants were bonâ fide purchasers. It is only as such that they can resist a claim founded upon the mortgage. Wood could not, and (apart from the question as to the wife’s position under the statute of 1848) she could not resist it. The defendants stand as purchasing from one who had the possession and control of the prop *226 erty, and they do not appear to have known of the wife’s rights in such property.
The difficulty is, that they purchased from Wood alone. If he had not a particle of title, how could they obtain a right as purchasers to contest the claim of the plaintiff. A title obtained from Chickering, with whom the piano was deposited, would have the same effect, and no greater.
The operation of the statute of 1848 upon the facts of this case, is either -to render every act of the wife as to this property precisely of the same legal force, as if she were sole, or to avoid all her acts from the beginning. In the former case the whole legal right of Mrs. Wood was gone on the Bd or 4th of March 1853, and the title perfected at law in the plaintiff. There remained only a right to redeem in equity. (Patchin v. Pierce, 12 Wendell, 61; Filler v. Acker, 1 Hill, 473.) She then could not have prevented the plaintiffs from taking possession; and it is justly observed in one of the cases, that a purchaser does not defeat a fraudulent transfer by a right derived from his assignor, but by force of the statute. The former had no such right himself, and could not delegate or transfer it.
The question then is, whether the acts of the wife in regard to this property were void from the beginning. The learned counsel for the defendants insists, that she was disabled to make any such mortgage, or any disposition of her 'property. In other words, that a common law disability continued in her to contract for the transfer of her interest, or to transfer it at all. We think the operation of the statute is precisely the reverse.
The marriage here took place in the fall of 1849, and the property was held by her at that time. The first section of the act of April 7th, 1848, governs the case. “ The real and.personal property of any female who may hereafter marry, and which she shall own at the time of marriage, and the rents, issues, and profits thereof, shall not be subject to the disposal of her husband, nor be liable for his debts; and shall continue her sole and separate property, as if she were a single female."
It seems impossible to avoid the conclusion, that under this language, the wife has the identical ownership and powers of disposition, as if she had remained .single. She is protected against her husband’s sole disposition of the property, or any claim of his *227 creditors; but her own power seems unqualified and absolute. So it appears to have been regarded in Van Sickle v. Van Sickle, 8 Howard, 267.
The analogy of the provision to the old equity doctrine in relation to a married woman having separate property, strengthens this view. She was a single woman as to such property, except as restricted by the instrument; and she could bind it by any papers showing an intention to do so. Indeed, the North American Coal Co. v. Dyett, carried it so far, as to make the separate estate liable for coal furnished to it, (being a manufactory,) on the order of an agent. Indeed the case goes far to establish a liability without specific charges, but for debts generally. (7 Paige, 12-20; Wend. 370.)
In this view of the case, the right of the plaintiff as against both wife and husband had become perfect as to title, and only subject to an equity to redeem. It had become as to mere strangers absolutely perfect; and to resist it, a bonâ fide purchase must be shown from the owner. That could not be done, for the husband had no title.
It may be that the actual consent of the wife to a sale by the husband would have been sufficient, without her uniting in an actual transfer. But there is nothing in the case” to show this. The result which the referee has arrived at we consider right.
Another question is, as to the damages allowed by the referee. He finds the value of the piano to be $180; and holds that the plaintiffs are entitled to judgment for that and for $50 damages,. for the detention from the commencement of the action at the rate of $5 a month, to the report. We are satisfied the plaintiffs had no right to such damages.
Judgment affirmed, except as to the allowance of $50 for damages, which is to be deducted, without costs of the appeal to either party.